# Patrick Henry McKenna *v.* Bridgewater Gas Company, Appellant.

*Negligence—Gas company — Explosion—Act of stranger—Duty of inspector.*

In an action against a natural gas company to recover damages for the death of plaintiff's wife, caused by an explosion of gas in plaintiff's house, it appeared that the defendant and another gas company operated lines in the same borough. The superintendent of the other company, an expert workman, in an effort to supply the urgent need of its customers, searched for one of its old lines, and supposing that he had found it, with expert tools pried open the box of the defendant which inclosed the by-pass. This connected its low and its high pressure lines, leaving the gas uncontrolled by the regulator, thus causing the death. Nothing external indicated that the box had been opened and the gas tampered with. *Held,* (1) that the defendant was not bound to maintain a line of sentries the length of its route to keep off trespassers, nor by personal inspection at frequent intervals during the day to ascertain whether some other gas company had mistaken defendant's line for its own, and tampered with its valves; (2) that there was no evidence to convict the defendant of negligence; (3) that the superintendent of the other gas company was the direct, efficient and dominant cause of the injury, for whom the defendant was in no way answerable; (4) that a judgment on a verdict for plaintiff should be reversed without a new venire.

Argued Oct. 16, 1899. Appeal, No. 99, Oct. T., 1899, by defendant, from judgment of C. P. Beaver Co., Dec. T., 1897, No. 176, on verdict for plaintiff. Before GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Reversed.

Trespass to recover damages for death of plaintiff's wife. Before WILSON, P. J.

The facts appear by the opinion of the Supreme Court.

The trial court charged in part as follows :

It appears that on the night in question the office of the company in Beaver Falls was open, and that W. C. Donaldson who testified on the part of the plaintiff and also on the part of the defendant, at about 9 o'clock went to the store of F. W. Walker in New Brighton and telephoned to the office in Beaver Falls ; that he was answered by some one in the office, who informed him that Mr. Sturgeon who had been in the office would return in about twenty minutes; that before that time expired, or Mr. Sturgeon not having returned to the office, he was called upon to turn off the gas in another house, and Mr. Walker telephoned to Mr. Sturgeon, or, it appears from the testimony of Mr. Donaldson, that he notified whoever it was in the office of the defendant company that there was something terribly wrong with the pressure in the borough of New Brighton.   Mr. Walker testified that the difficulty experienced by him with the gas was the excessive pressure in the Welsbach burners; that the gas was burning out at the top; and what the exact language which he used in the conversation with Mr. Sturgeon was as to the condition of the gas at the time, the court does not recall, but you will remember.

While telephoning at or about 9 o'clock, or while Mr. Sturgeon was still at the telephone, Mr. Long came in from the field. Then it was upon receiving the information, and some discrepancy, perhaps, as to the exact language used and the character of the information received exists, but upon information received that there was something wrong at New Brighton in the low-pressure lines, he, according to his testimony, immediately went to New Brighton, to the regulators provided for the purpose of reducing the pressure from the high pressure to the low pressure mains for the purpose of examining the low pressure mains.

It appears from the defense that upon the day in question one Charles Miller, the superintendent of the Citizens' Natural Gas Company, opened a box located about ten feet from the curb on Thirteenth street and Fourth avenue, and about twenty feet from the regulator house of the defendant company, and there turned a valve or gate which shut off a pipe or by-pass connecting the high pressure main with the low pressure main of the defendant company, aside from the regulator at that

point.    This has been designated by the testimony in this case as a by-pass, its purposes and uses having been described by witnesses both for the plaintiff and for the defendant. . . .

[It appears, and from the uncontradicted evidence, that the gas which caused the excessive pressure in the low pressure mains came through the by-pass, and if it had not been for the act or interference of Charles Miller, the superintendent of the Citizens' Natural Gas Company, with the valve upon this by-pass, we are safe in saying in this case that the accident would not have occurred.    So far as the testimony concerning the tuning in of the gas, and relying upon the regulators to reduce the gas from the high pressure to the low pressure mains, it would certainly be warranted, and would not be, at least in the light of the case, held as the proximate or controlling cause of the accident; but in using this term we do not mean to say that the questions in this case are controlled by the principle of proximate or controlling cause.] [9] . . . .

Another position taken by the plaintiff, if you should in the determination of any one of these questions find that there was negligence, and that negligence contributed to this injury, you need not proceed further.    If you should determine that in this there was no negligence, and that there was the exercise of ordinary care and prudence under the circumstances then you should pass to the consideration of another question and that is whether or not after receiving notice, at 9 o'clock, or thereabouts—the differences as to the time you will remember—whether or not ordinary or due diligence was exercised by the employees of the defendant company in trying to reduce the pressure of gas.    As to this testimony, it is conflicting.    We have a state of facts practically agreed upon by all the parties, except, perhaps, as to the wording of the notice received and the effect it would have upon the parties, upon the one who had received it.    On that question expert testimony has been introduced, and there is a decided conflict at to the prudent and reasonable course for one to have pursued upon the receipt of the notice.

[It appears from the evidence, and it has been referred to fully, that the purpose of the regulators is to reduce the gas from the high pressure to the low pressure system; that in connection with these regulators are gates or valves, the purpose

of which is to shut off the gas entirely from the high pressure to the low pressure system. The testimony of the plaintiff is that upon the receipt of this notice, some of the witnesses for the plaintiff say that the defendant through its employees should have gone immediately to the gate at the freight house, it being the last, or practically the last place from which gas was turned on, at least the last from which gas was received into the town, or had been turned on to the town, and shut off the supply at once. Other witnesses testify that the proper course to follow was to do as the defendant did in this case, that is, go immediately to the regulators. What was the natural thing, or prudent thing, for one to do in the light of all the circumstances in this case? The testimony both for the plaintiff and for the defendant is that the proper thing to have done was to have shut off the gas at the nearest point to the danger. Now, which would be the most effective, nearest point, would be a question in this case for your consideration.] [10]

Defendant's sixth point and the answer thereto among others were as follows :

6. Upon the undisputed facts in this case the question of proximate cause is one to be determined by the court, and upon these facts the act of Miller was an independent, unrelated cause of this injury, without which act this injury could not have happened; it was therefore the first or proximate cause in the series, the efficient and responsible cause, and the verdict should be for the defendant. *Answer :* This point is refused. [18]

Verdict and judgment for plaintiff for $15,000. Defendant appealed.

*Error assigned* among others was above instruction.

A. *Leo Weil,* with him *Martin & Martin, Charles M. Thorp* and *J. C. Gray,* for appellant.—There is no presumption of negligence from the mere explosion of gas : Voigt v. Michigan Peninsular Car Co., 112 Mich. 504; Borough of Easton v. Neff, 102 Pa. 474.

Where there are no disputed facts the question of proximate cause is for the court and not for the jury : Hoag v. R. R. Co., 85 Pa. 293; West Mahanoy v. Watson, 112 Pa. 574; Pass. Ry.

Co. v. Trich, 117 Pa. 390 ; Scott & Co. v. Ry. Co., 172 Pa. 646 ;
Yoders v. Amwell Twp., 172 Pa. 447 ; Ins. Co. v. Boon, 95 U. S.
133 ; Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 475.

*J. F. Reed*, with him *C. F. & E. J. McKenna, John M. Bu-
chanan* and *W. A. McConnell*, for appellee.—A gas company is
bound to a high degree of care in the management and control
of all its work, and if it can be shown that in the transaction
of a particular portion of its business its agents did not exer-
cise care which ordinary prudence would suggest, and that per-
sons engaged in like business would exercise, they certainly
cannot complain : Wharton on Negligence, sec. 955 ; Prichard
v. Gas Co., 2 Pa. Superior Ct. 179 ; Stoughton v. Gas Co., 159
Pa. 64 ; 2 Shearman & Redfield on Negligence, secs. 692, 693 ;
Butcher v. Providence Gas Co., 12 R. I. 149 ; Whitaker v.
Campbell, 187 Pa. 113 ; 1 Thompson on Negligence, 108.

In Koelsch v. The Philadelphia Co., 152 Pa. 355, it was held
that if the company knew, or ought to have known, of an in-
terference or defect in its line, it was its duty to guard against
any damages.

OPINION BY MR. JUSTICE DEAN, December 30, 1899 :

The defendant and the Citizens' Natural Gas Company both
maintained gas lines in the borough of New Brighton, Beaver
county.   On September 27, 1897, an employee of the Citizens'
company, one Miller, opened the gate of what is known as the
by-pass of the Bridgewater company and thus connected its low
and high pressure lines, leaving the gas uncontrolled by the reg-
ulator.   This line introduced gas into the dwelling of Mr. Mc-
Kenna, the plaintiff.   In consequence of this opening of the gate
the pressure rose in the low pressure line of defendant with
which Mr. McKenna's house was connected, and an explosion
in the house followed, which blew it to pieces and so severely
burned and otherwise injured plaintiff's wife that she soon after
died.   Plaintiff sued the Bridgewater company for damages, al-
leging this company was guilty of negligence in leaving the by-
pass in such an exposed condition that any one had access to and
could so manipulate it as to cause injury to the company's cus-
tomers ; and further that defendant's system of inspection was
loose and inefficient.   The defendant denied any responsibility

for the act of Miller who was not its servant, and was to them unknown. Also denied any negligence in any of the particulars charged.

The court submitted the evidence bearing on the question of negligence to the jury, instructing them that the burden was on defendant to rebut the inference of negligence fairly derivable from the circumstances. There was a verdict for plaintiff in the sum of $15,000. Motion for new trial was made which after hearing was refused and judgment entered. Defendant now appeals, assigning for error the refusal of the court to peremptorily instruct the jury to render a verdict for defendant.

We do not see how under any view of this evidence the judgment can be sustained. Miller was superintendent of the Citizens' gas company. He testified that the people along Fourth avenue on their line were urgently demanding a supply of gas, and he went out along the Citizens' company's old line to ascertain if they could be supplied from that source. He had no knowledge of his own which would enable him to locate it with certainty, so asked one Albright, a former superintendent, to aid him; Albright, standing at Sixth avenue and Thirteenth street, pointed to the line where was located a box with a stop cock fitted to the Phœnix Glass House; from this point Miller followed what he supposed was the Citizens' line until he came to a box at the corner of Fourth and Thirteenth streets; this box inclosed a by-pass, and stood about twenty feet from the regulator; he had with him what is called a curb key, about half an inch in diameter and four feet long; with this he pried open the box, got into it, and opened the gate separating the low from the high pressure; the disaster to plaintiff followed. Instead of manipulating his own line, that of the Citizens', Miller had blundered on to the Bridgewater line, where he ignorantly pried off the plank which protected their gate, and without inquiry recklessly put the gas in such a dangerous state of transmission, that it exploded and blew up plaintiff's house. It is not pretended that the defendant company had any control of or even knew Miller; he was an intruder on their easement, a trespasser in opening their box. Unless defendant failed in some duty it owed to McKenna as a patron, it cannot be answerable to him for negligence. It undoubtedly owed to him the duty of care in the construction of the line through which

the gas was conveyed to his house. It was bound to adopt and use those appliances by which it could regulate and keep under control such a volatile and explosive substance, and inclose or protect these appliances so as to render them reasonably secure and ready for use; all this, from the undisputed evidence, defendant did. It was not bound to maintain a line of sentries the length of its route to keep off trespassers; nor was it bound by personal inspection at frequent intervals during the day to ascertain whether some other gas company had mistaken defendant's line for its own, and tampered with its valves. In what respect then did it fail in duty? Where is negligence to be imputed to it? The learned judge of the court below in his general charge speaks as follows: "It appears, and from the un-contradicted evidence, that the gas which caused the excessive pressure in the low pressure mains came through the by-pass, and if it had not been for the act or interference of Charles Miller, the superintendent of the Citizens' Natural Gas Company, with the valve upon this by-pass, we are safe in saying in this case that the accident would not have occurred. . . . As we have said before, without the turning of this by-pass no accident would have occurred—that this accident would not have occurred; and that to this cause is directly attributable the deplorable condition of things on that night, and its dreadful results."

If those remarks be correct, as they undoubtedly are, then the damage was caused by the unauthorized act of Miller. But the court submitted the case to the jury on two theories, either or both of which they might adopt. First, was the box so negligently constructed that it was not secure from intrusion? We answer it was planked; Miller raised the lid by prying it up with a lever four feet long; that is, the curb key; with the same key he manipulated the gate; he was an expert, for that was his business, and he had the expert's tools. An expert burglar, with the tools of his trade, can enter a house which the ordinary man would find effectually barred against him. Nothing would have been complete protection of this box except a construction as strong as a jail. No such exacting duty was imposed on defendant by any rule of law, nor was there any evidence which warranted the jury in so finding.

Second, it was left to the jury to find, whether defendant

enforced such rigid rules of inspection along its lines, as would relieve it from the imputation of negligence. That it enforced such rules, and that they were observed by its employees with reasonable fidelity, cannot be disputed; that in their observance the servants of the company failed to detect this intrusion soon afterward does not show want of care, but only that, with ordinary acuteness of perception, sharpened too by experience, they failed to see a most improbable thing, to wit: that the expert of another company had come on their line, had broken into the box and had turned the gate. These inspectors were not bound to assume that either a blunderer or a criminal having no right upon the premises would commit such an act; when nothing externally indicated that the box had been opened, or the gas tampered with, there was no negligence in hastily extending their examination to other parts of the line. If, then, as the learned judge says, without this unauthorized act of the intruder, Miller, the injury would not have occurred, why hunt or authorize the jury to hunt for some other cause, which bore no direct relation to the result? Here was the cause, standing out palpable and conspicuous; the court below so conceded; the jury ought to have so found. To say that if there had been an impenetrable box the injury would not have happened, or if there had been personal inspection of the box every hour it would not have happened, does not warrant an inference of negligence. If the valve had not been there it would not have occurred; if it had been inclosed in an impenetrable steel cage it would not have occurred; if defendant had not built its line at all it would not have occurred; but being built and connected with plaintiff's house with the ordinary attachment for regulating the flow of gas, Miller, a wrongdoer, although not an intentional one, blew up the house. He was the direct, efficient, dominant cause of the injury, for whom defendant is in no way answerable, and the court ought to have said so to the jury.

The judgment is reversed and judgment is entered for defendant.